UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Alejandro Rivera</u>

    v.                                             Civil No. 17-cv-512-LM
                                                       Opinion No. 2018 DNH 076

<u>Body Armor Outlet, LLC, et al.</u>

**O R D E R**

Before the court is plaintiff Alejandro Rivera's motion requesting that the substantive law of Nevada be deemed "controlling" (doc. no. 58). Defendants Body Armor Outlet, LLC ("Body Armor Outlet") and Ace Welding Co., Inc. ("Ace") object and assert that the substantive law of New Hampshire should apply. Finding the motion premature, the court declines to rule on the question at this time, and therefore denies Rivera's motion without prejudice.[1]

For three reasons, the court concludes that the choice-of-law issues presented in this case are better addressed at a later juncture.

---

[1] In its objection, Ace also cross-moved for an order that the substantive law of New Hampshire applies. The court declines to rule on this request, because under Local Rule 7.1(a)(1), "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing." Regardless, the cross-motion would be denied without prejudice for the reasons stated herein.

1

First, there appears to be a dispute of fact regarding whether Rivera agreed to a New Hampshire choice-of-law provision set forth in the "Conditions of Use" on Body Armor Outlet's website. Defendants allege that when Rivera purchased the steel plates from Body Armor Outlet's website, he checked a box labeled "Yes, I agree," next to the following statement:

> With the confirmation of this purchase from Body Armor Outlet, LLC I am confirming that I have read the shipping and returns policy and fully understand the policy. By making this purchase I am agreeing to the terms described in this section for my order.

Doc. no. 60-2 at 2. Defendants assert that, by clicking the checkbox, Rivera agreed to the website's Conditions of Use. Rivera appears to challenge the claim that he made such an agreement, stating that the Conditions of Use were an "optional link" at the bottom of Body Armor Outlet's website. Doc. no. 66 at 3.

The court is not in a position to resolve this dispute. The submissions before the court amount to screenshots of the relevant webpages, along with unsworn factual statements of each party's counsel relating to the operation of the website and Rivera's purchase. The evidence is sparse and, more importantly, unclear. In addition, Rivera appears to make a claim that the Conditions of Use are unconscionable, which is itself a "fact-laden" determination. State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 669 (Me. 2010) (discussing New

2

Hampshire law). Further discovery and development of the record would help to clarify and resolve these disputes. See, e.g., Picone v. Shire PLC, No. 16-cv-12396, 2017 WL 4873506, at *15 (D. Mass. Oct. 20, 2017) (collecting cases for proposition that "it is premature to conduct the choice-of-law analysis at the motion to dismiss stage prior to discovery").

Second, the parties have not fully addressed a threshold legal question that relates to the Conditions of Use. Specifically, there may be a question as to whether the choice-of-law provision extends to a products liability claim, as opposed to a contract claim. The choice-of-law provision merely states that New Hampshire law applies to all "transactions," a term which could be interpreted to encompass only contract claims. See Black's Law Dictionary (10th ed. 2014) (defining "transaction" as the "act or an instance of conducting business . . . esp., the formation, performance, or discharge of a contract"); see also Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *4-5 (D.N.H. Oct. 7, 2009) (discussing law on whether choice-of-law provisions extend to tort claims). Only Ace addresses this issue.

Third, the parties have only explicitly identified one relevant conflict between Nevada and New Hampshire law. See Levin v. Dalva Brothers, Inc., 459 F.3d 68, 73 (1st Cir. 2006) ("An initial task of a choice-of-law analysis is to determine

3

whether there is an actual conflict between the substantive law of the interested jurisdictions."). Specifically, in strict products liability cases, New Hampshire recognizes a defense of comparative fault—which permits the jury to reduce the plaintiff's damages by the percentage that the plaintiff's misconduct caused his injuries, if not greater than 50%—while Nevada does not. Compare Thibault v. Sears, Roebuck & Co., 395 A.2d 843, 850 (N.H. 1978), with Young's Mach. Co. v. Long, 692 P.2d 24, 25-26 (Nev. 1984). Instead, Nevada recognizes traditional defenses like assumption of the risk and misuse of the product, which, if proven, bar recovery by the plaintiff. See Long, 692 P.2d at 25.

Although alluding to additional conflicts, the parties do not fully explain how Nevada and New Hampshire law otherwise conflict. In his motion, Rivera asserts that, in Nevada, defendants are subject to joint and several liability, but he does not describe how New Hampshire law differs. Rivera also cites numerous Nevada strict-liability principles, but he does not suggest that those differ from New Hampshire law. Also, Ace notes that New Hampshire law allows for apportionment of liability to unnamed parties, but does not cite any Nevada law to demonstrate a conflict. Finally, while the parties assert that their preferred state law should govern the case generally, they do not identify any conflicts with respect to Rivera's

4

other claims—misrepresentation and breach of express and implied warranties. Thus, deferring consideration on the choice-of-law question will not only allow the record to be further developed, but it will give the parties an opportunity to elaborate on the particular conflicts of law that require resolution.

The court makes one final point. Defendants argue that Rivera waived any argument regarding the application of Nevada law because in the joint discovery plan he agreed that New Hampshire law would apply, and he relied on New Hampshire law in previous filings. Likewise, Rivera argues that defendants should be estopped from denying that Nevada law applies because they relied on Nevada law in certain filings.

The court does not find the parties' arguments persuasive. Given the procedural machinations of this case, the court does not consider it surprising that all of the parties have alternatively relied on Nevada and New Hampshire law at various points during this litigation. The court is not convinced that such conduct rises to the level of waiver, concession, or estoppel, particularly where it is still relatively early in the litigation, there is little in the way of demonstrable prejudice, and the issue has not been previously addressed by the court. See Levin, 459 F.3d at 72 (stating that the point at which a party must raise a choice-of-law argument is "based on [each] case's own facts and equities"); see also Grecon Dimter,

5

Inc. v. Horner Flooring Co., Inc., 114 F. App'x 64, 66 (4th Cir. 2004) (declining to find waiver where party's reliance on other state's law "ended early in the case").

The purported "agreement" in the discovery plan is also ambiguous, in that it is unclear whether it constitutes an agreement as to the applicable substantive law, a mutual recognition that New Hampshire choice-of-law principles apply, or a mere acknowledgement that choice of law is an unresolved question. The pertinent paragraph appears under the heading "QUESTIONS OF LAW":

> Based on the holding in Klaxon, the law of New Hampshire should control this litigation. Consequently, New Hampshire's choice-of-law rules would apply. When New Hampshire is the forum for a suit in which one or more other states also have an interest, a court treats potential conflicts of law as follows: it first decides whether a relevant law is substantive or procedural; if it is substantive, the court determines whether it actually conflicts with the laws of another interested state and, if so, the court then conducts an analysis based upon five choice-of-law-influencing considerations; if it is procedural, the court generally applies its own law.

Doc. no. 51 at 4 (citations omitted). The ambiguity is compounded by the fact that Klaxon would not appear to apply under these circumstances. Rather, because this case was transferred under 28 U.S.C. § 1404(a), this court would "apply the state law that would have been applied if there had been no change of venue," i.e., Nevada law. Meyer v. Callahan, No. 09-cv-106-PB, 2010 WL 4916563, at *1 n.3 (D.N.H. Nov. 29, 2010).

6

In the absence of prejudice to defendants, the court declines to bar Rivera from litigating the applicability of Nevada law on the basis of defendants' waiver and estoppel arguments.  Moving forward, the court will be disinclined to find waiver or estoppel on choice of law merely because a party seeks to preserve a particular argument or defense under Nevada or New Hampshire law—for example, by filing a DeBenedetto disclosure.  That being said, the parties should be prepared to fully address any choice-of-law issues that arise during subsequent motion practice.

**CONCLUSION**

For the foregoing reasons, Rivera's Motion to Establish Nevada Law as Controlling (doc. no. 58) is denied without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 10, 2018

cc: Counsel of Record

7